This is case number 412-1111, People's State of Illinois v. Dinesh Patel. May I say your client's name right? Yes. Thank you. Attorney Pappas is here on behalf of the appellant and Attorney Saldeghi is here on behalf of the state. Would you like to proceed, Mr. Pappas? Yes. All right, you may proceed. Thank you very much for the opportunity to address you this afternoon. My name is George Pappas. I've been practicing criminal law for quite some time and I was contacted by Mr. Patel's family to represent him in a matter that's before you this afternoon. I did not represent Mr. Patel this morning. My office is in Chicago. I'm a sole practitioner. I do a fair amount of this type of work. The reason why I took the case on is because I wanted to bring to this court's attention what I consider to be a great injustice that was done at the trial of Mr. Patel. I'm not going to go over the facts in detail. I'm assuming that the court is familiar with them. I'm only going to touch upon the facts that pertain to my argument and hope I can convince you that I'm right. The case was tried to a bench trial before Judge Salk in Bloomington after the defendant was arrested on February 23, 2012 for selling, for a lack of a better term, synthetic marijuana, which became illegal January 1, 2012. That's when the legislature enacted the statute. It became effective January 1, 2012. And Dinesh Patel was arrested for the 23rd of 2012. And there are certain facts which were brought to the court's attention which clearly indicates that Mr. Patel had absolutely no idea that the substance that he was selling contained what the legislature had recently classified as a controlled substance. In finding the defendant guilty, Judge Salk initially ruled, and the primary reason for his ruling was that under the delivery statute, the defendant does not necessarily have to know or appreciate the fact that he's delivering a controlled substance. According to Judge Salk, that made absolutely no difference. Well, that is not what this court has held, and that is not what our Illinois Supreme Court has held. The individual who is going to be accused of such a serious crime, a felony, this happened to be a class 4 felony, has to know that what he is delivering to the individual, to somebody else, is contraband. And then as a secondary type of an afterthought, Judge Salk said, well, even though he doesn't really have to know, I still think there are a couple of factual circumstances that lead me to believe that perhaps Dinesh Patel knew what he was doing. In his finding, and the state argues, there were three reasons why Judge Salk made this secondary opinion of guilt. One was the fact that this item was not on display at the time the undercover informant came into the store to purchase it. Now, I really don't understand the logic of that type of a position, because what difference does it make whether it's not on display, hidden from view, or if it's open? If it's contraband, whether it's in open view and purchased by somebody or sold by somebody, or whether it is hidden from view, it's still a violation of the law. But he relied on that, even though it was brought to his attention that up until the end of December of 2011, all of this stuff was in open view. And during January, it was in open view and sold. And the reason why in this particular situation it was not in open view is because it was delivered to the store the day before. And that was uncontradictory. Well, it's a reasonable inference, is it not, that something illegal would not be put on display in open view for the public, including an officer of the law who might walk in to view, to see, to find. But as Your Honor is aware, Detective Tyler testified, if it's in open view, don't buy it. And he knew they were going in there to buy a different item called California Cush, which Detective Tyler knew at that time that that wasn't an illegal substance. And he told the informant, if it's in open view, don't buy it. Okay. So I don't think that that… Where am I supposed to draw from there? Well, I think whether it's in open view or not, Judge, that doesn't necessarily establish that Patel was aware that it was contraband. There are a lot of items that are not in open view that are sold from a store which are not contraband. So I don't think you can infer from that that the item being sold, even though it's not in open view, has an illegal substance in it. That was item number one that the court relied on. Number two, the fact that Bulldog, according to the judge, was used for smoking. Again, that does not necessarily imply that Bulldog contained an illegal substance. There are a lot of items that are used for smoking, and that doesn't necessarily mean that it's an illegal drug. As a matter of fact, spice, the generic term for it is spice, a lot of spice was being sold throughout the state at that time that did not contain contraband. And the third item that the judge relied on was the fact that Patel's nephew stopped selling the item at a different store. I don't know exactly how you can infer that the defendant was aware that Bulldog contained a controlled substance just because another store at another location had stopped selling it. There was never any explanation presented to Judge Salk indicating the reason why it was not sold at this other single store. But the most important fact is the fact that during, and this is uncontroverted, during all of December, January when it became illegal, February, March, and April, it was sold, this item was sold throughout the state without any prosecution except the prosecution of Dinesh Patel. The highest law enforcement officer of the state of Illinois, the Attorney General, elected not to prosecute these cases until the merchants were informed that this substance was illegal. And even then, when they sent out that notice, it was in April, even then they told them that you're going to be fined, you're not going to be charged with a Class 1 felony. But Detective Tyler took it upon himself, and his testimony was, I didn't like that policy. So he took it upon himself to arrest Patel, charging him, originally I think it was a Class 2 felony, and the state fined him. Whose policy was this? This was the Attorney General's. The Attorney General's policy. The Attorney General doesn't set policy for the state's attorney. Well, but if your Attorney General tells you I'm not going to be prosecuting, I'm going to be prosecuting these cases after April of 2012, what is a merchant to think? No, no, I don't follow that. I didn't know the Attorney General prosecuted these cases. I thought it was up to the individual state's attorneys. I don't see what the Attorney General has to do with it. Right. I'm not aware of any other state's attorney who made this decision to prosecute anybody when the Attorney General had placed an order out, indicating that we are going to advise the merchants of this problem before we begin to pursue criminal action. There are things that were ignored by the judge which clearly indicated that Patel had absolutely no knowledge that this item he was selling contained a substance that recently became illegal. His boss, we have to keep in mind that Patel was a store clerk. He had worked for this owner for a year and a half. He was working 10 hours a day, making $2,000 a month, working 70 hours a week. He was told by his boss, I have a certificate that indicates this item can legally be sold. We have to keep in mind also, and it was brought to the attention of Judge Salk, that this individual was nothing more than a clerk, and he gained absolutely no monetary reward or benefit by selling this product. The $40 in pre-recorded funds that were used to purchase the item by the undercover informant were not found on him. As a matter of fact, they were never found, indicating that those two $20 bills were used in the regular course of business. They were put in the cash register, and when they searched the place four or five hours later, they didn't find it, indicating that Patel considered it a normal transaction. As I indicated before, Patel was told by customers when he ran out in January, I can go buy this in Bloomington. So he was of the belief that he could sell this problem legally. He was not involved in ordering the merchandise. He was not involved in any display of the merchandise. He was nothing more, as I indicated before, a store clerk. Under these circumstances, I think the evidence points totally contrary to the court's finding. With all due respect to the trial court, I believe he was not only wrong on the law, but wrong on the facts as well. Dinesh Patel should not have been convicted of this case. All he did was go to work 10 hours a day and go back and live in a trailer that was provided by the owner of the store. At 5 o'clock in the morning, he was back at work, and his job was to make coffee, start the pumps going, and the sale of merchandise was not his responsibility. I submit under those facts, he should not have been convicted, and we are asking this court to overturn it. Are there any other questions? Thank you, Mr. Pappas. You'll have a chance at a rebuttal. Thank you. Mr. Dodeghi, you ready to go? May it please the court, Mr. Pappas. There is no controversy in this case that the defendant delivered a controlled substance. The issue on appeal is whether or not the delivery was knowingly. Knowledge, of course, is a question for the trier of fact, and it is usually proved by circumstantial evidence. There are two factors that I would emphasize in terms of the trial court's determination that this delivery was knowingly. First, the defendant was aware of the fact that the owner had stopped selling the spice, so to speak, at his store in Morris. He was also aware that his nephew had stopped selling spice at his store in Seneca. As a result, according to his own testimony, his own statement to the police, he was suspicious that the spice was illegal. He was concerned that the spice was illegal. Second, the spice bulldog was previously on display. That's according to a testimony of Zora Singh, the defendant's co-worker. The owner then told the defendant, prior to the sale to the confidential informant, don't display the spice. Under the circumstances, a likely explanation for that is that the owner knew that the spice was illegal. A reasonable inference would be the defendant accordingly had information to suggest indicating it was illegal. Do you think Judge Suit was correct when he found that all the state had to prove was a knowing delivery? They didn't have to prove that he knowingly delivered a controlled substance? I couldn't find any case law to support that position. The case law that I found indicates that the delivery of the controlled substance has to be knowingly. So you're only going on Judge Suit's alternative finding? I'm going on his alternative finding. Counsel, what evidence do we have to infer that because you say the owner most likely knew that this was a controlled substance, that the defendant, given the defendant's position as a mere clerk? The defendant, according to the defendant's testimony, did speak with the owner. The owner told the defendant that he had a certificate and therefore it was not a controlled substance. However, then the owner also told the defendant subsequently, don't display this stuff. So if you put those two together, I think it's just a reasonable inference that the defendant was aware of a substantial probability that there was a controlled substance. Why couldn't the inference be that this was an expensive canister and they wanted to avoid shoplifting so he wanted it kept behind the counter? Why isn't that just as reasonable an inference? Well, I think this would have to be put in the context, and I'm not saying it's the only inference. I'm suggesting it's a reasonable inference. But in the context where this occurred, you know, there's first the conversation about whether or not this stuff is illegal, and then there is the conversation, don't display this, and the spice had previously been displayed. So there is nothing to suggest that it was not being displayed for that reason. Well, I thought the evidence was that the last container that was in the display cabinet was sold, and then the delivery came the night before it was confiscated. But then we only told the defendant, don't display this stuff, according to the defendant's own testimony. So there was a change in policy as far as displaying of the spice, and it was in the context of the legality. I mean, previous discussions about the legality of this. The other evidence that came in was apparently customers came into the store during the time period when they didn't have spice to sell. Yes. And the customers told the clerk, Mr. Patel, well, we're going to have to go to a different place in Bloomington to get it since you're out. Yes. So he was aware that other stores were selling the product. Yes. Wouldn't that support a theory that he would think there was nothing wrong with selling it? I think there's two elements of evidence which would, I think, weigh against that conclusion that I've already tried to enumerate. Then there was this evidence that it was being sold at other stores. Credibility findings is the responsibility of the trial court to weigh the evidence and come to a conclusion on this. Well, Mr. Dotygie, did the trial court actually make a credibility finding as to the defendant? Yes. He did? Yes. Okay. What did the trial court find? I know that the trial court found that he was convinced the defendant knew that this substance he was selling was illegal. Yes. But did he ever specifically say, I don't find the testimony of the defendant believable? I mean, more tuned in or honed in on credibility other than the general statement that I think he knew that it was illegal. I'm reading from the trial court's statement. The court does not find the defendant's protestations that he didn't, in fact, know that it was illegal when he was selling it to not be credible. And finds that even if he did have. So there was a credibility finding as far as the defendant's protestations of innocence. When you read that, though, and the way it is reported in the transcript, he said to not be credible. Not to be credible. He didn't know, in fact, that it was illegal. Does not find the defendant's protestations that he didn't, in fact, know it was illegal when he was selling it not to be credible. Right. Mr. Dordeche, did you watch the videotape of Mr. Patel's interrogation? I did not. I only read the transcript. You might want to take that time sometime and watch it and see if you think he's credible or not. I'm sorry? You could make a determination probably from looking at that interrogation videotape about whether he's being credible to the police officer and giving truthful answers to every question that was asked of him. He was a very cooperative suspect. Let's put it that way. Yes. Of course, the standard of review in these cases is well established. It is whether, after reviewing the evidence in the light most favorable to the state, any rational prior effect could have found the elements of the offense beyond a reasonable doubt. So we would have to find the trial court act to do it rationally in order to reverse. Yes. And given the evidence that was here, I would suggest that under that standard of review, the trial court's verdict should be affirmed. I'm also available, of course, to answer questions. I guess I'm having trouble seeing how you infer knowledge. Give me all the facts that support an inference that he acknowledged that there was an illegal substance. There are no ingredients listed on the canister. No. Tell me what supports a finding that he would have known. I would suggest, again, emphasize these two factors. The fact that his boss told him not to display it. The fact that his boss, in the context of the other evidence, and the specific other evidence was that the defendant was aware that it had stopped being sold, that his nephew had stopped selling it. Well, they had stopped selling it at the BP in Lexington because they didn't get a shipment in. Yes, but it was not just that he was aware that it was not being sold at these two stores. It was that he drew the inference from that that it might be, or that it was suspicious and concerned that it was illegal. How does that amount to knowledge? Well, knowledge would not have to be 100%, so to speak. It would have to be, was he aware of a substantial probability. And if your boss says, well, I have a certificate, in fact, the boss faxed the certificate to the police officer. Yes. So they had it in writing. He had a certificate that said these products are legal. And he even had lab results from one product, that wasn't this product, but it was a similar type product, showing that it did not contain this AM2201. Well, I don't mean to get tactical. It didn't list AM2201 as being one of the substances that was not contained. I'm being overly… You're correct, you're correct. Basically, there was nothing that showed up that was a controlled substance under Illinois law in that list of drugs that were found or substances that were found. The statement, again, it's obviously the defendant did not see the toxicology statement. It was only introduced for the very limited purpose to support the defendant's statement that his boss told him, I've got a certificate. Right, he didn't see it, but his boss told him he had it. Yes. In fact, his boss did have it. Yes. And provided it to the police. And provided it to the police. I want to ask you another question. Isn't it true that the police officer, when he applied for the search warrant, listed Mr. Patel as the owner of the BP station? That is not recollection, yes. So he was mistaken about that. Yes. Was there some testimony from a roommate? I'm sorry? Was there some testimony from a defense roommate? What was that testimony? Well, there were a number of aspects of it. But, I mean, the testimony of Zora Singh was that, first, spice had been previously on display, one. Two, and obviously not picking out those portions to support the state's case, but two, that Singh was aware that people smoked spice to get high. Those were two aspects. Could the trial court have inferred that defendant knew the same things that his roommate knew? Well, is that a reasonable inference? I mean, I suggest in the brief that it is a reasonable inference. I would not want to say that that is a major component of the state's argument because that was put in there to indicate that this was a suspicious, so to speak, substance. And we know from the defendant's own testimony the defendant considered this to be a suspicious substance based upon his conversation or his asking. If hypothetically all the state had was the defendant's admission that he found the substance suspicious or he was suspicious that it might be illegal, would that be enough to find him guilty beyond a reasonable doubt? I think that that has to be considered in conjunction with the... Well, then if you're saying it has to be considered in conjunction with some other evidence or reasonable inferences, I think your response is no, that wouldn't be enough. Well, let me try to phrase it this way, Your Honor. We do have more than that. I'm aware of that. Yeah. But the answer to my hypothetical is then it is or it is not enough. And if you don't know because there isn't a case specific... I'm not sure if I could answer. I would not try to answer that question. My inclination is, and I don't know if there's any case law on it, is that would not be enough. But again, I would try to emphasize there is more than just that. I understand that. Just that. Mr. Dodeghi, weren't these canisters labeled not for human consumption? I don't recall, Your Honor. I think in the record it was that way, and I looked at the photographs, and of course they're not close enough to really read. We didn't have the actual canister that was admitted into evidence. I do not remember. I just can't answer the question, Your Honor. I'm sure you don't know the answer to this question. I'm going to ask it anyway. Why would the state be proceeding against this defendant instead of the owner of the gas station, who's actually ordering this product, who actually decides where it's displayed, et cetera? I know you don't know the answer. I can't answer that question. Thank you. All right. Any rebuttal, Mr. Pappas? Thank you, Your Honor. With respect to Judge Turner's question concerning suspicious behavior, on page 21, beginning at the bottom of 20, page 21, I cite numerous cases indicating that suspicious behavior alone is insufficient proof of knowledge, Your Honor. So there is a substantial amount of case law on that particular issue. Do any of those cases, I know that you used the term in your brief, suspicious behavior, but my question pertained to not suspicious behavior, but an admission by the defendant that he was suspicious about the product he was selling. Because I think that is different than suspicious behavior, which is, I believe, what your case is citing your brief address. I couldn't find it, Your Honor. Okay. The issue with respect to the credibility of the defendant and the ruling that was made by the judge, if you consider the three reasons why the judge found him guilty, he relied totally on the testament of the defendant. So how, on the one hand, can you say, well, I don't find it credible, but yet he said, well, the defendant didn't display the items, the defendant was aware that other places sold it and two places did not sell it, and the defendant was aware that Bulldog was used to smoke. So what he's doing there is relying on the truthfulness of the defendant to find him guilty. So that is why his decision is inconsistent with all the other facts that were presented to him, which clearly indicated that he had absolutely no idea that he was selling the country. With respect to the argument that's made by the State concerning the lack of display, if your honors will look at the record and will look at the photographs, there is Bulldog on the counter in that store, and the claim or the claim during the trial, well, it was an attempt to conceal it by placing a note tab on top of it. It was on the counter. Again, I want to emphasize that the mere fact that two other stores in the area were not selling this item, and every other store was, is no indication, and you cannot draw that reasonable inference that the defendant was aware it was because the substance contained contrary, and that's the reason why it wasn't sold at his nephew's store. They could have run out of this item just as this store had run out during the months of January up until the 25th of January and through portions of February. Your honors, if there are any other questions, I'll be more than glad to attempt to answer them. Thank you very much for your time and the opportunity you've afforded me to address you. Thank you, Mr. Pappas. We're going to be in recess. We'll take this matter under advisement.